## GILLEN v KROGER GROCERY & BAKING CO et

Ohio Appeals, 1st Dist, Hamilton Co

No 4943. Decided March 30, 1936

John C. Thompson, Cincinnati, and Byron D. Kuth, Cleveland, for plaintiff-appellant.

Nichols, Morrill, Wood, Marks & Ginter, Cincinnati, for defendants-appellees.

## OPINION

By HAMILTON, J.

Heard on appeal.

The plaintiff in his amended petition seeks an accounting for certain stock of The Kroger Grocery & Baking Company, and the accumulated earnings thereof.

The defense is a general denial of the allegations of the amended petition, and failure on the part of the plaintiff to perform under a certain contract, and a third defense pleads a settlement with the plaintiff in full satisfaction of all claims or demands growing out of the contract.

The plaintiff's claim is based upon a certain agreement of employment entered into on the 7th day of October, 1925, superseding and cancelling an agreement made on the 10th day of November, 1924. The agreement of November 10th, 1924 provided:

"That in consideration of employe remaining continuously in the employ of the Company for a period of five (5) years from the date hereof, and for other good and valuable considerations, it is hereby agreed by and between the parties hereto, as follows:

"I: THE COMPANY agrees to issue and deliver to the President of the Company, as Trustee, to be held by him in his name for the benefit of the EMPLOYE Two hundred fifty (250) Ten ($10.00) Dollar shares of the Common Capital stock of the Company, and the EMPLOYE agrees to accept the benefits of said trust and to perform the EMPLOYE'S obligations thereunder, subject to the terms and conditions herein set forth and hereby agreed to:—

"(c) Should the EMPLOYE, for any cause, by reason of the action of the COMPANY, EMPLOYE, or any other person or persons, leave the employ of the COMPANY before five (5) years from the date hereof have elapsed, EMPLOYE, shall for-

feit all right, title and interest, legal and equitable, in and to said stock, and all dividends declared thereon, and shall have no further interest in or claim to said stock or dividends, and the trust shall thereupon cease and terminate, and the TRUSTEE shall return said stock and dividends held by him for the benefit of the employe, to the COMPANY."

The contract contains many other provisions, but those quoted are sufficient for a determination of the issues.

In the agreement of October 7th, 1925, the agreement of November 10th, 1924, was cancelled, and it was provided:

"That, in consideration of the cancellation of the agreement dated the 10th day of November, 1924, by and between the said Company, and the said Employe, and, the further consideration of the Employe remaining continuously in the employ of the Company for a period of six years from and after July 1st, 1925, and for other good and valuable consideration, it is hereby agreed by and between the parties hereto, as follows:"

Then follows the provision that shares of the capital stock is to be set aside for the benefit of the employe.

Sub-section (e) of this contract, dated October 7th, 1925, provides:

"Should the Employe for any cause, by reason of the action of the Company, Employe, or any other person or persons, leave the employ of the Company before six (6) years from July 1st, 1925, have elapsed, then in that event settlement shall be made with the employe, as per Contract dated November 10th, 1924, and referred to above, and this present Contract shall be treated as void and as if same had not been written."

The case of **Clark v Kroger Grocery & Baking Company**, Hamilton County Court of Appeals, No. 4801, decided December 16, 1935, **(20 Abs 607)** involved a similar contract in which Clark present-ed like claims to those presented by the plaintiff in this case. It was claimed by the plaintiff in that case, as in this, that a continuing trust was created and the rights of the employe under the contract were determined by the failure to serve the five year term. The effect of this decision was, that remaining with the company for the term

designated was prerequisite to a recovery based on the issuance of stock.

The evidence is undisputed that Gillen did not serve the term of six years provided for in the contract. Plaintiff claims in July, 1928, he was wrongfully discharged by the company, and for this reason was unable to continue in the employ for the six year period; that his discharge was without justification and he challenged the good faith and the sufficient reasons advanced for that discharge.

The defendant contends that under the terms of the contract the absolute right to discharge at any time was given the defendant company, and that no reason for the same was required. However, if they are not so protected, they contend that they had good and sufficient reason for the discharge, as disclosed by the evidence, and, further there was a full and complete settlement between the plaintiff and defendant company, when the plaintiff left the employ of the company.

Under sub-section (c) of the contract of October 7th, 1925 and the contract of November 10th, 1924, it would seem that a strict interpretation of the language used did give the company the right to discharge the employe at any time without regard to justification. The language is:

"Should the Employe for any cause, by reason of the action of the Company, Employe, or any other person or persons, leave the employ of the Company * * *."

This is a general and sweeping provision. But it would not do violence to the construction of that clause to hold that the parties do mean "by reason of the action of the company," that discharge should be based on justification. To give any other construction would possibly lead to the finding that the contract was void as lacking mutuality. However, it is not necessary to determine here that the Company had the right to discharge without reason, thereby avoiding its obligation under the contract.

We, therefore, consider that the plaintiff is entitled to have the cause of his discharge inquired into.

We have read the evidence concerning the cause for the discharge. It would serve no good purpose to recite from that evidence. However, it appears the discharge of Gillen was by and through Benjamin H. Wilkin, who was Gillen's superior, and who was at the time one of the superintendents

of The Kroger Grocery & Baking Company. At the time he gave his evidence, he was not in the employ of the company, and he relates many instances in which he criticized Gillen for his actions and conduct, and his failure in the conduct of the business for the Kroger Company of its store in Cleveland, and finally informed Gillen that he would give him three months probationary period to improve conditions, or he would be discharged. He states conditions did not improve, and he found Gillen doing things without authority, and after one or two questionable transactions he did discharge Gillen. Wilkins' testimony is supported by that of other members of the company, and we are of opinion that the evidence supports the claim of the Kroger Company that they were fully justified in discharging Gillen.

We, therefore, hold that Gillen's discharge was in good faith and for good and sufficient reason.

On July 6th, 1928, after the discharge of Gillen, he was asked by one Dietrich, who at the time was superintendent in charge of the Eastern Division of the company, which included Cleveland, Columbus, Pittsburgh, Youngstown and Akron, in his capacity as manager of that district to meet with him. On July 8th, 1928, he had a conference with Gillen, at which time Dietrich asked Gillen to bring in his contracts with the company and surrender them. Gillen did so. Gillen states that when he surrendered the contracts, he asked "How about my stock contracts?" At the hearing, at which were present Gillen, Dietrich and Wilkin, they finally arrived at an adjustment and agreement of just the amount of money the Kroger Company owed Gillen. Wilkin there stated to Gillen that he would have the proper checks forwarded to Dietrich and that Dietrich could deliver them to Gillen and obtain Gillen's receipt; that, thereafter the checks were mailed to Dietrich; that Gillen surrendered the contracts to Dietrich, and upon receipt of the checks Dietrich called Gillen to his office. The checks were thereupon delivered to Gillen, and Gillen without making any claim concerning the stock contracts which had been delivered to Dietrich, executed the following instrument, in explanation of what the checks covered:

"These checks cover in full all moneys coming to me from the said Kroger Grocery & Baking Company."

This transaction occurred in the early part of July, 1928. Gillen received the checks amounting to nearly $3,000.00, cashed them and received the money. The record does not disclose any further action on Gillen's part until the filing of this action in November, 1929.

Our conclusion is that there was an accord and satisfaction; that the company was justified in discharging Gillen, and that Gillen, not serving the term provided for in the contract, has no enforceable rights in this action.

Decree accordingly.

ROSS, PJ, and MATTHEWS, J, concur.